## Case No. 41.

### In re ADAMS.

[5 Ben. 544.][1]

District Court, S. D. New York. March, 1872.

BANKRUPTCY—NOTICE TO CREDITORS—MARSHAL'S RETURN.

A return of the marshal that he had "sent written or printed notices to the creditors named on the schedules, and herewith returned, which schedules were made up by him on the best information he could obtain in respect thereto, after diligent search," is sufficient.

In bankruptcy. The marshal, as messenger in this case, made return to the warrant, that he had "sent written or printed notices to the creditors named on the schedules, and herewith returned, which schedules were made up by him on the best information he could obtain in respect thereto." At the meeting of creditors, one of them objected to the return, as being insufficient, in the absence of any statement that the bankrupt had not delivered to the marshal a schedule of his creditors, or had refused to deliver such schedule, or that any proceedings had been taken ineffectually to compel him to deliver such schedule, and in the absence of any statement showing the sources of the marshal's information. The register certified the question to the court, with his opinion that the return was sufficient.

BLATCHFORD, District Judge. I concur in the view of the register.

---

## Case No. 42.

### In re ADAMS.

[6 Ben. 56.][1]

District Court, S. D. New York. April, 1872.

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

to all questions which may be put to me relating to the disposal or condition of the said property of the said bankrupt, to his trade and dealings with others, and his accounts concerning the same, to all debts due to or claimed from him, and to all other matters concerning his property and estate, and the due settlement thereof according to law, reserving my right to refuse to answer any question in regard to such matters on the ground of privilege as the attorney and counsel of said Adams, which I may not be able to answer except in consequence of my retainer as such attorney and counsel, and from information derived from my client as such." The examination was adjourned till the 18th of March, when the witness appeared. The assignee refused to proceed with the examination of the witness under the oath which he had taken. The witness then proposed to take an oath in the following form: "I, being duly sworn in regard to the matters now pending before the said register, say, &c." To this the assignee objected. The register certified the question to the court.

---

## Case No. 43.

### In re ADAMS.

[3 N. B. R. 561, (Quarto, 139.)]

District Court, D. Massachusetts.

BANKRUPTCY—DISCHARGE—FRAUD—EVIDENCE.

[A debtor, carrying on business through agents in the country at large, made, in January, several conveyances to his wife, and, in the following May, filed his voluntary petition in bankruptcy. He was insolvent at the time of the transfers to his wife, but claimed that he did not know it, as he had not then settled with his agents. Held, considering his duty to know the state of his affairs, the short time that elapsed between the conveyances and the filing of the petition, the great improbability of his story, and the fact that he and his wife had not attempted to repair the error, that he was not entitled to a discharge.]

[Cited in Re Rainsford, Case No. 11,537.]

[In bankruptcy. Application by Reuben A. Adams, a bankrupt, for discharge from his debts. Denied.]

E. Avery, for the bankrupt.
J. D. Ball, for the creditors.

LOWELL, District Judge. The proceedings in bankruptcy were begun by the voluntary petition of the debtor, May 19, 1868. In January of that year, he conveyed two parcels of land at Provincetown, and a fractional share in three several schooners, to his wife. Caroline M. Adams. The bankrupt has carried on for many years a rather peculiar kind of business, which he called a general auction and commission business, and which consisted of buying goods at wholesale and sending them to various country towns, large and small, to be disposed of by his travelling agents by auction. He usually caned in his accounts and made an examination of the state of his affairs in January of each year; but he swears he did not do so in the year of his failure until the report of his insolvency had been spread abroad, and his creditors had become alarmed and attached his property, which was in the month of May, and that when ne then called upon his agents for their returns, he found to his surprise that his creditors were right, and that he was deeply insolvent. He explains the transfers to his wife by saying that she owned a large estate which he had tried and intended to keep separate from his own, and that by some mistake this property was put into his name, though in equity and justice it was always hers. The time chosen for the conveyances he accounts for by its being January, which he says is settling time, and that he wanted to know how he stood, as he was about to change the nature of his business.

The evidence shows that in 1855, Adams settled upon his wife all his interest in his father's estate, and there is nothing to impeach this transaction, which was done under the advice of counsel. But the indenture of trust contained a power to Adams and his wife to revoke the uses, which they did in the following year; and since that time the title of the wife must depend upon the general law of Massachusetts regulating the property of married women. Some of the shares of bank stock, and perhaps other evidences of property, have always remained in Mrs. Adams' name, and I do not see that the present creditors of her husband can lay any claim to these, it not appearing that the transfer was illegal or fraudulent when it was made. But it is otherwise with the property conveyed by the husband to the wife in January, 1868. Whatever may have been the supposed equitable right of the wife to this property as against her husband, there is nothing, so far as appears, to mark it as hers, or even to show that any specific money or estate of hers had been used to buy it. There was no trust, express or implied, impressed upon it, and it was part of his apparent capital. The transfers, therefore, must be examined upon their merits as gifts from the husband to the wife at tnat time, and the case has very properly been so argued on both sides. As such they cannot be sustained. In arriving at this conclusion it is not necessary to inquire into any doubtful or contested points of law. Granting that a bona fide settlement upon a wife will be upheld, excepting when the husband is actually insolvent at the time—which is a good deal more than has ever been decided in Massachusetts—still it is clear that Adams was insolvent when these transfers were made. This is not denied. But it may be said that he was not aware of his situation, and therefore ought not to suffer by a refusal of his certificate, though the assignee should be entitled, upon the facts as they now appear, to avoid the transaction, as a technical fraud upon the creditors. If the bankrupt and his wife had surrendered this property as soon as the mistake was discovered, the case would stand very differently; but as he has not done so, nor made any attempt to repair his error, I find it the more difficult to believe that it was a mere mistake. His conduct since his admitted insolvency, and the character of his answers to the interrogations propounded to him in his examination, the great improbability of his story, the short time before his actual failure, all go to snow that the conveyance was made after. and not before his suspicions of his solvency had been aroused. There cannot be a doubt that he has committed a fraud on the act. and that he ought to have known the state of his affairs, and he has failed to show to my satisfaction that he did not know it. Whether, if he had persuaded me that he simply made the deeds without inquiry, or even with good reason to suppose himself solvent, he could still be discharged, unless he made restitution, I need not decide; nor need I inquire whether he kept proper books of account, nor whether the loss of his books is chargeable to him, because upon the main and most important part of the case I decide that the discharge must be refused.